LEVI WILSON, Plaintiff in Error, *v.* GEORGE WOOD, and HENRY A. HUNT, Defendants in Error.

ERROR TO RICHLAND.

A sold a stock of goods and a house and lot to B and C. The latter consented to relinquish the sale, and that A might find other purchasers, which he did, and sold to D and E, agreeing to give to D and E a title to the house and lot, which had been conveyed to B and C. These gave up the deed to themselves to D and E. On a suit by A, against D and E, on the notes given by them for the goods and the house and lot, they pleaded these facts, alleging failure of consideration, they not having received a conveyance of the house and lot.

*Held,* that D and E were entitled to a conveyance to themselves, and if there was any special replication to the pleas, it should have been set out—that the handing over of the conveyance to themselves by A and B, was no conveyance, and that a finding sustaining the pleas should not be disturbed, but that A might resort in chancery to B and C, for a conveyance of the house and lot.

THIS was an action of assumpsit. The declaration contains the common counts, and two special counts on the following notes; the first as follows:

" $500.                                        *August* 21, 1856.

For value received, we jointly and severally promise to pay L. Wilson, or order, five hundred dollars, on or before the first day of June next.

HENRY A. HUNT,
GEORGE WOOD."

The other for $530, payable June 1st, 1858, and the same as the above in all other respects.

Also an account for goods sold, and the common money counts.

The defendants filed the general issue, and four special pleas, the third being for set-off, and the fifth the statute of limitations.

The first and second set up a failure of the consideration of the notes, the first a total failure and the second a partial failure, to the amount of $800; and with only this difference, both the first and second pleas are drawn alike. They set forth, that the notes were executed upon the express consideration that said plaintiff would make, execute and deliver to said defendants a general warranty deed "to a certain parcel of land," (describing the same,) "or cause the same to be done," and that "said deed of conveyance should be made before the said notes were to be paid, and on the express consideration that said deed" should be made before the payment of said notes. That said deed "has not been so executed," wherefore the consideration has failed, etc. Defendant also filed an account.

The plaintiff joined in the general issue, and filed general replications to the other pleas, and defendants joined, etc.

The cause was tried by a jury, and verdict rendered for defendants.

A motion was made by plaintiff for new trial and overruled, and plaintiff excepted.

The bill of exceptions sets forth the following evidence:

The notes sued on were admitted and read to the jury.

*J. E. Martin* testified, that he knew of the making of the notes sued on; that one if not both were in his handwriting. That at the time of making the notes, a sale of goods, and a

house and parcel of ground, were sold to the defendants; that the plaintiff made the sale. The goods were a stock which witness and brother (Marshall Martin) had bought of the plaintiff about four months previously, and to which they had added by their own purchases, $400 or more of stock. The house and lot were the same bought by the witness and his brother (with the goods) from plaintiff, and which he procured to be conveyed to them by deed from John Parker, in whom the title had previously been vested. The sale to the defendants at the date of the notes, amounted to $910 for the goods, and $1,000 for the house and lot. Witness and his brother had not paid plaintiff for the house and lot, nor in full for the goods, when they were sold and turned over to the defendants, but by the contract and agreement of all parties, the defendants were to have the goods for $910, and the house and lot for $1,000, and the defendants were to pay witness and his brother $460, and the plaintiff $450, on account of the goods, and to give their notes to the plaintiff for $1,000, for the house and lot. That the reason why plaintiff made the sale was, that he did not seem satisfied with witness and his brother, and that they (witness and brother) themselves were not satisfied—they did not think they were selling goods fast enough, and the plaintiff was not getting his pay as fast as he thought he should, and the witness and his brother had agreed that if the plaintiff could find any other person to purchase the establishment, they would consent to sell, and the plaintiff, in pursuance of this agreement, made the contract of sale to the defendants. At the time of the sale, it was arranged and agreed with the defendants that the deed held by witness and his brothers should be given up, and another deed should be procured from Parker, and the witness' understanding was, that the way the deed was to be procured was through the instrumentality of the plaintiff, who was to get the title from Parker. Witness gave up the deed he had to the defendants, according to the agreement, and they have kept it ever since, so far as he knows, and the goods and house and lot were delivered to the defendants. He knows of their paying plaintiff $50 at one time, and $50 at another, on account of the $450 worth of goods. Witness says, the defendants never requested or called on him for any further deed or title, and he has never made any other. Whether Parker ever made them a deed or not, he does not know; he himself had never made a deed to anybody.

The defendants also filed an affidavit, setting up that they had paid or liquidated the sum of $600 to one Joel, on account of plaintiff, as part payment of the goods, etc., pur-

chased of plaintiff, and as part payment on the first note, and also that they had paid at sundry times, to plaintiff, on account of the goods, etc., mentioned in declaration, divers sums, amounting to $200, which facts the plaintiff admitted without calling for witnesses, etc.

The defendants offered in evidence and read to the jury, two receipts given by the plaintiff to them, for money amounting to $350, and the plaintiff further admitted a credit to defendants of $52, for a mule.

The court gave instructions for plaintiff and for defendants, the latter of which are copied in the opinion.

A motion for a new trial was overruled.

The cause was tried in the Second Division by consent of parties.

A. KITCHELL, for Plaintiff in Error.

C. H. CONSTABLE, for Defendants in Error.

BREESE, J. This was an action of assumpsit in the Richland Circuit Court, on two promissory notes. Besides the general issue, the defendants put in two special pleas. The first set forth that the notes were executed upon the express consideration that the plaintiff would make, execute and deliver to the defendants, or cause the same to be done, a general warranty deed for a certain lot in the town of Olney, (describing it), and that said deed of conveyance should be made before the notes were to be paid, and on the express consideration that the deed should be made before the payment of the notes, averring that the deed has not been executed, and therefore the consideration has failed. The second plea is in all respects like the first, except that it alleges a partial failure of the consideration. General replications were filed to these pleas. The jury found for the defendants, and exceptions were taken to the refusal of the court to grant a new trial, and the suit is brought here by writ of error, the plaintiff assigning as error the instructions given by the court for the defendants, and overruling the motion for a new trial.

From the bill of exceptions, it appears that at the time of making the notes, a sale of a stock of goods, and a house and lot in Olney, were made by the plaintiff to the defendants. The goods were a stock which the Martins, brothers, had purchased of the plaintiff about four months previously, and to which they had added, by their own purchases, four hundred dollars or more of stock. The house and lot were the same which the Martins bought of the plaintiff

with the goods, and which the plaintiff procured to be conveyed to them by deed from one Parker, in-whom the title was vested at the time of this sale and purchase. The notes were dated August 21st, 1856, and payable, one on the 1st of June, 1857, and the other on the 1st of June, 1858. At the date of the notes the sale to the defendants amounted to $910 for the goods, and $1,000 for the house and lot. The Martins had not paid the plaintiff for the house and lot, nor the full amount due for the goods when they were turned over to the defendants, but by the contract and agreement of all parties, plaintiffs, defendants and the Martins, the defendants were to have the goods for $910, and the house and lot for $1,000, and of this, the defendants were to pay to the Martins $460, and to the plaintiff $450, and this on account of the goods, and were to give their notes to the plaintiff for $1,000 for the house and lot, which are the notes in suit. It seems the reason why plaintiff made the sale was, that he was not satisfied with the Martins—and the Martins were not satisfied, they thinking they did not sell goods fast enough, and the plaintiff was not getting his pay as fast as he desired. The Martins then agreed with the plaintiff, if he would find some person to purchase the establishment, they would consent to sell, and accordingly, the plaintiff made the sale to the defendants. At the time of the sale to the defendants, it was arranged and agreed with them, that the deed for the lot, which the Martins held, should be given up, and another deed should be procured from Parker through the instrumentality of the plaintiff, who was to get the title from Parker. The deed to the Martins was given up by them to the defendants, and it has been in their possession up to the time of the trial, so far as known, and the goods and house and lot were delivered up to the defendants. There was no proof that the defendants had ever requested or called on the Martins for any further deed or title, and they have never made any other. It was not shown whether Parker ever made the defendants a deed or not, or that plaintiff had ever procured from him a deed to the defendants. With the proof of some credits claimed by the defendants, the cause went to the jury on this evidence.

The court, on behalf of the defendants, instructed the jury as follows :

" 1. If the jury believe from the evidence that the plaintiff was to make these defendants a title to the property (the lot of ground), and it appears from the evidence that a deed had been made to Martin for it, and Martin has never conveyed the same property to defendants, or to some one else who has since conveyed to the defendants, then the plaintiff cannot

recover on the notes, if the jury believe the notes were given for a deed to said property.

"2. If the jury believe the notes were given in consideration that Wilson would make, or cause to be made, a deed for the house and lot, and that the said Wilson, or no one else for him, has ever made such deed, then the plaintiff cannot recover for the amount due on the notes sued on.

"3. If Parker conveyed the lot to Martin, the title conveyed to Martin thereby cannot be relinquished by a mere surrender of the deed; it can only be done by Martin making and delivering his deed; and if he has made no deed, whatever title he got from Parker, is still in Martin, and Parker or no one else could convey that title to defendants, except Martin."

These instructions, though not very carefully drawn, are appropriate to the issues and proofs in their support. If there was any answer to the defense set up in these pleas, it should have been replied specially. The pleas being good, and sustained by the proof, and the instructions conforming, there can be no ground for reversing the judgment. The defendants, by this defense repudiate the contract, and consequently lose all right to the house and lot; and as the Martins, who hold the title, have been paid for it by the plaintiff in this arrangement with the defendants, the plaintiff must, on failing to recover these notes, be entitled to a conveyance of the lots on bill filed against the Martins, and probably, to the rents also, as against the defendants, in a suit brought for such purpose.

The judgment is affirmed.

*Judgment affirmed.*