Wright, J.
Joshua S. Gill brought suit in the Court of Common Pleas of Union county, to recover of the Atlantic and Great Western Railroad Company the value of three mules killed by a locomotive of the railroad company.
Judgment was rendered in favor of Gill in the Court of Common Pleas. The railroad company filed a petition in error in the District Court, which reversed the judgment of the Common Pleas. A petition in error is filed here to reverse the judgment of the District Court.
The facts are these : Gill and one Graham were adjoining owners. Between them was a division fence. Upon that part of this fence which Gill was to keep up, a tree which had been standing on Graham’s land fell. This *248 broke the fence down. Through the opening thus made, Gill’s mules, which were in his fields, and not running at large, strayed into and upon Graham’s land. Thence they went into Graham’s lane, which led across the railroad track. By contract with the railroad company, Graham had agreed to fence the track through his land. But at the crossing of the lane he had omitted to put in cattle-guards, or anything else to prevent cattle going from the lane upon the track, as should have been done to make his fence a complete railroad fence. Gill’s mules therefore went down the lane and thus upon the track. Here they were struck by a locomotive and tender and killed.
It is claimed that, under the circumstances of the case, the mules were trespassers upon the lands of Graham, because of Gill’s neglect to keep up his part of the partition fence which the tree had broken down. Being trespassers upon Graham’s land, it is said they were also trespassers upon the lands of the railroad company, and so only entitled to such protection as the law awards to trespassers. We can not agree to this. Had Gill known that the fence had been broken down, or were the circumstances such as that he ought to have known, he might have been charged with negligence for failing to make the necessary repairs. There is nothing to show how long it was between the time when the fence was broken down and the time when the mules were killed. Gill testifies that he was at the point where the tree fell from five to eight days before the killing, when everything was in order; and it does not appear that he was in such fault as would render him liable to the charge of negligence, or of allowing his cattle to run at large. But supposing he was herein negligent, he was only remotely so. That negligence which wTas proximate to the injury complained of, was in having no cattle-guards or other protection to prevent stock going from Graham’s lane upon the track. In other words, the railroad was not properly fenced. ‘Who was responsible for this ?
The statute, March 25, 1859 (S. & C. 331), provides that *249 railroad companies must construct and maintain fences for their tracks. If they do not, they are liable for damage done to animals by reason of the want or insufficiency of such fences. It appears to be claimed by the company that they were absolved from the obligations the statute imposed, by reason of the fact that they had made a contract with Graham to provide a fence; but this can not. be. If they had made such contract, and Graham had never complied with it at all, and never fenced a rod, certainly the company would be liable for damages occasioned by this dereliction of duty. Or if Graham had built the fence, and built it insufficiently, as was in fact the case, the company is in fault, for Graham is their agent in this behalf. It is not otherwise than if they had hired any other person upon a contract to fence, or if the fence was built by their regular employees. In either and any case, it is -the duty of the company to see that a proper fence is made and kept, and not to devolve that duty upon some third person who neglects it. Making a contract to build a fence is not building one.
These views are in unison with the opinion of the court as expressed in M. & C. R. R. Co. v. Stephenson & Brown, 24 Ohio St. 54.
An examination of the cases of Russell v. Hawley, 20 Iowa, 219, and Great Western R. R. Co. v. Helm, 27 Ill. 199, shows that they have but remote refei-ence to the matter in hand. In the quotations given from them, it is assumed that where a road has a proper fence, which is thrown down by some third person, so as not to be the fault of the company, they are not responsible. We do not disagree with such a proposition. In the case at bar, the fe'nce was insufficient through the neglect of the company’s agent or contractor, so that the company was directly in fault.
In Indianapolis and Cincinnati R. R. Co. v. Adkins, 23 Ind. 340, the company had fenced and put in bars for the accommodation of the land-owner, Whitlow, through whose premises the road passed. Clearly, if he had left the *250 bars down carelessly, and his cattle had been killed by a passing train without fault of those running the train, he could not recover. The bars had thus been carelessly left down. The cattle of Adkins strayed on to the lands of "Whitlow, and thus got upon the track. Certainly, the cattle of Adkins could have no better right than if they had belonged to Whitlow.
It is claimed that the court erred in charging the jury with reference to the contract between the railroad company and Graham, by which the latter agreed to fence the road. Gill had no connection in fact or law with this contract ; and the court, in effect, said that the company was required to use the same care in running trains, to avoid injury to the mules, as if no such contract existed. We see no error in this. Had Gill been a grantee of, or in privity with Graham as to this contract, he would have been affected by its provisions, and could not have claimed damages over a breach of it, as was held in C., H. & D. R. R. v. Waterson, 4 Ohio St. 424; Easter v. L. M. R. R., 14 Ohio St. 48. No such l’elation, however, existed, and the existence of such a contract could not prejudice Gill’s rights.
The company then was in fault because the agent or contractor employed in that behalf had not fulfilled the required conditions, and the mules got upon the track by reason of insufficiency in the fence.
The company being in fault in this particular, the court said, in the second charge, that plaintiff' using ordinary care to keep his stock in, defendant would be liable, if it failed to exercise ordinary care merely, and by that neglect the injury happened, though it was not guilty of gross negligence. The charge seems to us correct. If a proper fence had been maintained, and then the mules had got upon the track, ordinary care to prevent accident is all that would have been required of the company. -But if they had constructed no fence, or one insufficient, and so cattle come on the track, certainly a degree of care more than ordinary would have been demanded, and if exercis *251 ing ordinary care only, they occasion injury, they would be responsible. They could not let their fences run down, and then claim to be held to that degree of care only which was required when they kept them up and in good order. This would be requiring only the same degree of care in case of fence orno fence — of a fence that was sufficient and in compliance with the statute, and one that was not.
It is said that the verdict is against the weight of the evidence. This portion of the argument in behalf of the railroad is addressed chiefly to the handling of the locomotive at the time of the accident. The engineer testifies that he could not stop in time to avoid striking the animals. Binding this to be the case, he put on steam to strike as hard as possible. In this he is supported by a considerable amount of testimony, although there is some the other way, even on this point. But this view does not comprehend the whole case, inasmuch as it leaves out all considerations with regard to negligence in the matter of the fences. When these are thrown into the scale, so far from the finding being against the weight of evidence, we are of opinion that the verdict was as it should be.
Judgment of District Court reversed, and that of Common Pleas affirmed.
Scott, Chief Judge, Day, Johnson, and Ashburn, JJ., concurred.